**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------- X
JUNIPER ENTERTAINMENT, INC. and
JUNIPER SERVICES, INC.,
                                          **ORDER**
                                            07-CV-2413 (ADS) (AKT)
                              Plaintiffs,

      -vs.-

MICHAEL CALDERHEAD and JAMES
CALDERHEAD,
                                Defendants.

----------------------------------------------------------X

**SPATT, District Judge**

      Presently before the Court are objections to a Report and Recommendation of United States Magistrate Judge A. Kathleen Tomlinson dated February 16, 2012 addressing the calculation of damages in the above-captioned litigation between the Plaintiffs Juniper Entertainment Inc., and Juniper Services, Inc. ("Juniper" or "the Plaintiffs") and the Defendants Michael Calderhead and James Calderhead ("the Defendants"). For the reasons set forth below, the Court adopts in part and declines to adopt in part Judge Tomlinson's Report.

## I. BACKGROUND

      The facts and procedural history of this case have been exhaustively recounted in: (1) Judge Tomlinson's Report and Recommendation dated August 17, 2007 on the Plaintiffs' preliminary injunction motion ("Preliminary Injunction Report") (Docket Entry # 16); (2) this Courts' order dated September 19, 2007, adopting in its entirety the Preliminary Injunction Report (Docket Entry # 31); and (3) Judge Tomlinson's Report and Recommendation dated February 16, 2012, on the Plaintiffs' motion for a default judgment ("the Report") (Docket Entry

# 125). Thus, the Court assumes the parties familiarity with the facts and procedural history of this case and will only briefly summarize the information pertinent to the instant motion.

**A. Factual Background**

The Defendant James Calderhead was employed by Juniper as an executive pursuant to an employment agreement executed in February 2005. During his employment, James Calderhead identified New Wave Communication Inc. ("New Wave"), as a potential acquisition target for Juniper. At that time, James Calderhead's brother, the Defendant Michael Calderhead, owned a substantial interest in New Wave. In late 2005, Juniper purchased New Wave pursuant to a Stock Exchange Agreement (the "Agreement").

James Calderhead became the president of New Wave and Michael Calderhead was employed by Juniper as a New Wave executive. Michael Calderhead signed the Agreement. Pursuant to the Agreement's restrictive covenant, Michael Calderhead, as a seller of New Wave, agreed that during his employment he would not induce employees to leave their employment or induce customers to terminate their services with New Wave. Michael Calderhead further agreed not to aid any competitor of the Plaintiff or hire any of the Plaintiffs' employees within one year of their employment with Juniper. Further, Michael Calderhead agreed not to induce any clients to transact business with competitors. On January 17, 2007, ten months after the close of the sale, Michael Calderhead informed the Plaintiff that he intended to resign. However, he remained at New Wave until March 2007. On May 27, 2007, the Plaintiff terminated James Calderhead's employment.

On June 15, 2007, the Plaintiffs filed the complaint in this action alleging that: (1) Michael Calderhead breached a stock exchange agreement; (2) James Calderhead breached an employment agreement; and (3) both Defendants breached their fiduciary duties to the Plaintiffs.

According to the Plaintiffs, in violation of their respective agreements, the Calderheads: (1) formed and operated a competitor company to New Wave called Communications Infrastructure, Inc. ("CII") while they were still employed by New Wave; (2) misappropriated confidential client information to lure clients away from New Wave; and (3) induced employees to leave New Wave and join CII.

The Plaintiffs immediately sought an order preliminarily enjoining the Calderheads from directly or indirectly competing with New Wave by soliciting its clients or inducing its employees to leave. The Court referred the preliminary injunction to Judge Tomlinson, who, following a hearing, issued the 86-page Preliminary Injunction Report recommending that a preliminary injunction be issued enjoining Michael Calderhead from: (1) disclosing any of the trade secrets or confidential information of Juniper/New Wave; and (2) soliciting, directly or indirectly any of Juniper/New Wave's customers whose names and contact information appeared on a Juniper/New Wave customer list. Judge Tomlinson further recommended against granting a preliminary injunction against James Calderhead based on her finding that the Plaintiffs had failed to offer any proof that James Calderhead was working for CII. On September 19, 2007, the Court adopted the Preliminary Injunction Report in its entirety.

## B. The Defendants' Default

The Defendants initially appeared *pro se*, but shortly after the commencement of the lawsuit retained the law firm of Bracken, Margolin & Besunder, LLP. On June 24, 2008, the Court granted Bracken, Margolin & Besunder, LLP's motion to withdraw as counsel. Subsequently, the Defendants again proceeded *pro se* until January 5, 2010, when they retained the counsel of Jonathan L. Stein, Esq. On July 29, 2010, the Court granted a motion by Mr. Stein to withdraw as counsel, and directed him to serve a notice by personal service on the

Defendants advising them that if they failed to either appear *pro se* or through counsel within thirty days of receiving said notice, the Court would entertain a motion to enter a default against them.

Mr. Stein served this notice on the Defendants at their last known addresses on July 30, 2010. After no appearance was made, on March 1, 2011, the Plaintiffs moved for a default judgment against the Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2). Subsequently, on April 11, 2011, the Court entered a default against the Defendants and referred the matter to Judge Tomlinson for an inquest as to damages, including reasonable attorneys' fees and costs.

## C. The Report and Recommendation

During the inquest, which included a hearing and numerous submissions, the Plaintiffs sought the following categories of damages: (1) New Wave's lost profits for the years 2007 through 2010; (2) New Wave's net losses for the years 2007 through 2008 prior to its filing for bankruptcy; (3) damages associated with the destruction of the New Wave business; (4) attorney's fees accrued in this action; and (5) punitive damages.

On February 16, 2012, Judge Tomlinson issued a Report and Recommendation, recommending as follows:

> Plaintiffs be awarded $225,000 in punitive damages as against Defendant Michael Calderhead. The Court respectfully recommends that no damages be awarded as against Defendant James Calderhead, nor for lost profits, net losses, destruction of business, or any attorney's fees for either Defendant. Plaintiffs are also entitled to post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

(Report at 35.) With respect to the award of punitive damages against Michael Calderhead, Judge Tomlinson stated as follows:

4

This Court does find that punitive damages are warranted against Defendant Michael Calderhead in conjunction with his breaches of the fiduciary duty he owed New Wave as his employer. . . .

In the Court's Report and Recommendation regarding the preliminary injunction, the Court found that Michael Calderhead improperly retained proprietary information belonging to New Wave and misappropriated New Wave trade secrets. DE 16 at 55, 56. The Court further found that immediately after leaving New Wave, Michael Calderhead went to work for CII, a direct competitor of New Wave and that Michael Calderhead had met with the principal of CII in 2006 regarding employment with CII. Id. at 24, 63. Moreover, Michael Calderhead acknowledged that during his employment with New Wave, he signed a contract on behalf of New Wave enabling fellow employee Tyson Burris to purchase wi-fi equipment in the amount of $17,000 – equipment that was never deployed for New Wave's benefit. Id. at 23. These facts are consistent with the scheme alleged in the Complaint – that Michael Calderhead was competing with New Wave while employed there and improperly used New Wave's proprietary information.

There was also evidence that Michael Calderhead acted willfully and in disregard of the rights of Juniper. Notably, the Court found credible a Juniper employee's testimony that Michael Calderhead told him that he planned to tell other New Wave employees "that they had an opportunity to go to work for him - to go to work with him." DE 16 at 22. The Court also credited that employee's testimony that he was willing to work for a competitor of New Wave because he had to "feed his family." Id.

. . . .

Although Plaintiffs did not specify the amount of punitive damages they were seeking as directed by the Court's July 22, 2011 Order, DE 114, the Court may nevertheless fashion an appropriate award. . . . Here, Plaintiffs did not present the Court with evidence of Michael Calderhead's salary and it is not set forth in the Stock Exchange Agreement. However, in fashioning a remedy here, the Court is mindful that Juniper paid $225,000, along with a stock exchange, to purchase New Wave. In its discretion, then, the Court respectfully recommends that Plaintiffs be awarded punitive damages from Michael Calderhead in the amount of the cash portion of the purchase of New Wave, namely $225,000. Id., Ex. F § 2.1. The Court is mindful of the fact that

> Michael Calderhead was not the sole owner of New Wave at the time of the sale. However, the $225,000 is being awarded as punitive damages here, not breach of contract damages, and is an amount the Court finds appropriate taking all circumstances into account.

(Report at 30–32.)

Defendant Michael Calderhead filed timely objections to the Judge Tomlinson's Report.

## II. DISCUSSION

### A. Standard of Review

"When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erroneous." Walker v. Vaughan, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002) (citation omitted). A party may serve written objections to a report and recommendation within ten days of receiving the report. See Fed. R. Civ. P. 72(b). Upon receiving timely objections, the district "court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1)(C); see also Fed. R. Civ. P. 72(b). The objecting party must point out the specific portions of the report to which he objects. See Barratt v. Joie, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. March 4, 2002) (citations omitted).

When a party objects to a report and recommendation, the Court is required to make a *de novo* determination as to those portions of the report and recommendation to which objections were made. 28 U.S.C. § 636(b)(1)(C); Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989). The phrase "*de novo* determination" in Section 636(b)(1)—as opposed to "*de novo* hearing"—was selected by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. 667, 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980). Section 636 does not require a court "to rehear the contested testimony in order to carry out the statutory

command to make the required 'determination.'" Id. at 674, 100 S. Ct. 2406. Rather, in making such a determination, a court may in its discretion review the record and hear oral argument on the matter. See Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters, 894 F.2d 36, 40 n. 3 (2d Cir. 1990). Furthermore, a court may in its sound discretion afford a degree of deference to the magistrate judge's report and recommendation. See Raddatz, 447 U.S. at 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424.

In a case where a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). "Furthermore, even in a *de novo* review of a party's specific objections, the Court ordinarily will not consider arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance." Fairfield Fin. Mortg. Group, Inc. v. Luca, No. 06-CV-5962, 2011 WL 3625589, at *2 (E.D.N.Y. Aug. 16, 2011) (internal quotation marks omitted).

**B.  As to the Recommendations Denying Compensatory Damages as Against Both Defendants and Denying Punitive Damages as Against James Calderhead**

In the Report, Judge Tomlinson recommends that the Court deny the Plaintiffs' request for:  (1) damages against either Defendant for lost profits, net losses, and destruction of business ("the compensatory damages"), or attorney's fees; and (2) punitive damages as against James Calderhead.  To date, there have been no objections filed regarding Judge Tomlinson's recommendation on these issues.

In reviewing a report and recommendation, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.

§636(b)(1)(C). "To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." Wilds v. United Parcel Serv., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)). The Court has reviewed Judge Tomlinson's Report with regard to the above-stated recommendations and finds it be persuasive and without any legal or factual errors. There being no objection, the Court hereby adopts Judge Tomlinson's recommendation to deny the Plaintiffs' request for: (1) compensatory damages or attorney's fees as against both Defendants; and (2) punitive damages as against James Calderhead.

## C.  As to the Punitive Damages Award Against Michael Calderhead

In the Report, Judge Tomlinson recommends awarding the Plaintiffs $225,000 in punitive damages as against Defendant Michael Calderhead based on his breach of his fiduciary duties.

"Under New York law, an employee has a common law duty of good faith and fair dealing to the employer not to exploit its confidential information for the benefit of himself and others." Paz Systems, Inc. v. Dakota Group Corp., 514 F. Supp. 2d 402, 410 (E.D.N.Y. 2007). New York courts allow punitive damages against disloyal employees when the liability arises pursuant to a breach of fiduciary duty, as opposed to breach of contract. See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 526 (S.D.N.Y. 2011); Wrap-N-Pack, Inc. v. Kaye, 528 F. Supp. 2d 119, 126 (E.D.N.Y. 2007) (Spatt, J.). "While New York law recognizes breach of fiduciary duty as an exception to the general rule that punitive damages are not recoverable for breach of contract claims, this is only true so long as the very high threshold of moral culpability is satisfied." First Nat. Bank of Arizona v. Nat'l Lending Corp., 2011 WL 1315998, at *15 (E.D.N.Y. March 14, 2011) (internal quotation marks and

citations omitted). "To sustain a claim for punitive damages in tort, one of the following must be shown: intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the rights of another." Don Buchwald & Assoc., Inc. v. Rich, 281 A.D.2d 329, 330, 723 N.Y.S.2d 8, 9 (1st Dep't 2001).

Defendant Michael Calderhead first objects to the award of punitive damages on the ground that his actions did not rise to a level of egregiousness warranting the imposition of punitive damages. In this regard, Michael Calderhead contends that his actions were not egregious because: (1) his actions were "brought about by the Plaintiff's lack of management and poor decisions"; and (2) he did not use stolen materials from New Wave or steal New Wave's unique business concepts or disparage the Plaintiff's name after his departure.

With respect to his first contention, the Court notes that job dissatisfaction did not absolve Michael Calderhead of his fiduciary responsibilities. That Calderhead felt justified in his actions does not make them any less egregious.

As to the egregiousness of his actions, the Court agrees with Judge Tomlinson that Michael Calderhead's behavior was sufficiently egregious to warrant the imposition of punitive damages. In the Report, Judge Tomlinson based her recommendation for punitive damages against Michael Calderhead predominantly on factual findings made in the Preliminary Injunction Report, which this Court adopted in its entirety. Not only was Calderhead competing with New Wave while employed there and improperly using New Wave's propriety information, but he was actively recruiting New Wave employees to work for him at CII in contravention of the Agreement and using proprietary information to lure away New Wave customers.

The intentional and calculating nature of his actions are further evinced by the following facts: (1) Michael Calderhead started at CII and resigned from New Wave within ten months of the sale of New Wave to Jupiter; (2) he erased information from his laptop that had an impact on New Wave's ability to follow up with customers; and (3) he used a proprietary New Wave customer contact list to compete with New Wave. The Court finds that this is the type of behavior that ought to be punished and deterred, which are the primary purposes of punitive damages. See Patterson v. Balsamico, 440 F.3d 104, 121 (2d Cir. 2006). Accordingly, the Court finds that Michael Calderhead's actions were sufficiently egregious to warrant the imposition of punitive damages.

Next, Michael Calderhead objects to the award of punitive damages on the ground that, because the Plaintiffs failed to submit a proposed amount of punitive damages when directed by the court to do so, it would be "unjust for the Court to impute an amount as an award in favor of the Plaintiffs when the Plaintiffs and their legal counsel failed to follow the orders of this Court". (Obj. at 2.) By order dated July 22, 2011, Judge Tomlinson directed the Plaintiffs to specify the amount of punitive damages they were seeking. (Docket Entry 114.) Despite this order, the Plaintiffs did not provide a proposed amount of punitive damages. However, this does not constitute a waiver of the Plaintiffs' right to receive punitive damages for Calderhead's egregious behavior. While a proposed figure may have been useful in guiding the Court's analysis, it was not a necessary component to a punitive damages award. The Court does not find Calderhead's conclusory assertion that it is "unjust" to award punitive damages in this context to be compelling.

Finally, Calderhead objects to the amount of punitive damages imposed, because the award of $225,000 "almost quadruple[s] what Calderhead took home at the time of the sale of

the Company to Juniper [and] punished Calderhead for funds exchanged during the sale that he did not benefit from." In fashioning the appropriate punitive damages, Judge Tomlinson acknowledged that "Michael Calderhead was not the sole owner of New Wave at the time of the sale", and therefore he did not receive the entire $225,000 cash purchase. (Report at 32.) However, Judge Tomlinson found that, in light of all circumstances surrounding his misconduct, punitive damages in the amount of $225,000 was appropriate. Although the Court finds the basis for Judge Tomlinson's proposed punitive damages award to be reasonable in light of Michael Calderhead's cumulative conduct, the Court ultimately finds that the absence of compensatory damages awarded to the Plaintiffs as against Michael Calderhead for his breach of fiduciary duties precludes the Court from awarding punitive damages against him under New York law.

New York law requires a finding of actual or nominal damages before punitive damages may be awarded. Action House, Inc. v. Koolik, 54 F.3d 1009 (2d Cir. 1995) ("The district court's instructions on punitive damages were not consistent with New York law, which requires a finding of actual damages before punitive damages may be awarded."); Reynolds v. Pegler, 223 F.2d 429, 434 (2d Cir. 1955) ("As the finding of compensatory damages was in the nominal sum of $1.00, defendants insist that under New York law there can be no award of punitive damages. But we have already held otherwise."); see also Colavito v. New York Organ Donor Network, Inc., 438 F.3d 214, 221 (2d Cir. 2006) ("We think that the district court was likely correct that, under New York law, a plaintiff can ordinarily recover punitive damages for wanton and willful conduct even when there are only nominal compensatory damages."); Air China Ltd. v. Li, No. 07-CV-11128, 2010 WL 3260154, at *2 (S.D.N.Y. Aug. 5, 2010) ("The punitive damages award against Defendant Li based on fraud in the inducement must be reduced to zero

11

because no compensatory damages for this cause of action were found. Because any punitive damages award for fraudulent inducement would be in a proportion inconsistent with due process, a new trial on that punitive damages claim would be futile."); Car-Freshner Corp. v. Big Lots Stores, Inc., 314 F. Supp. 2d 145, 154 (N.D.N.Y. 2004) ("Punitive damages may be awarded on the basis of nominal damages, although it should be remembered that any award of punitive damages must not be grossly excessive." (citing Reinah Dev. Corp. v. Kaaterskill Hotel Corp., 59 N.Y.2d 482, 465 N.Y.S.2d 910, 452 N.E.2d 1238 (1983); White Eagle Market, Inc. v. Gonzalez, 36 A.D.2d 864, 321 N.Y.S.2d 1019 (2d Dep't 1971)).

Here, Judge Tomlinson recommended against awarding any compensatory damages to the Plaintiffs. Consequently, the Court is precluded from awarding the Plaintiffs punitive damages as against Michael Calderhead and therefore respectfully declines to adopt Judge Tomlinson's recommendation.

Nevertheless, the Court notes that there is no indication that Judge Tomlinson considered whether the Court should award nominal damages as against Michael Calderhead for the breach of his fiduciary duties. If the Plaintiffs are entitled to nominal damages on their breach of fiduciary claim, then New York law would permit an award of punitive damages. See Action House, 54 F.3d at 1013 ("Had nominal damages been awarded [with respect to breach of fiduciary duty and misappropriation claims], we believe that an award of punitive damages would have been consistent with New York law."); Bryce v. Wilde, 39 A.D.2d 291, 293, 333 N.Y.S.2d 614, 616 (3d Dep't 1972) ("Punitive damages [in a tortious interference with contract case] are not recoverable alone although they may be based upon an award of nominal compensatory damages and there must be actual malice shown on the part of a defendant."), aff'd, 31 N.Y.2d 882, 292 N.E.2d 320, 340 N.Y.S.2d 185 (1972). Accordingly, the Court denies

12

the Plaintiffs' application for punitive damages as against Michael Calderhead with leave to renew within thirty days of the date of this order. In their renewed application, the Plaintiffs must indicate whether they intend to pursue an award of nominal damages for Michael Calderhead's breach of his fiduciary duties, and the legal basis supporting their application .

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Judge Tomlinson's Report and Recommendation is accepted in part and rejected in part as set forth herein. The Court: (1) denies the Plaintiffs request for compensatory damages and attorney's fees as against both Defendants; (2) denies the Plaintiffs request for punitive damages as against James Calderhead with prejudice; and (3) denies the Plaintiffs request for punitive damages as against Michael Calderhead, without prejudice and with leave to renew on the grounds stated herein, within thirty days of the date of this order, and it is further

**ORDERED**, that the Clerk of the Court is directed to terminate the motion for default judgment (Docket Entry # 109).


**SO ORDERED.**

Dated: Central Islip, New York
March 31, 2012


                                               _/s/ Arthur D. Spatt_
                                               ARTHUR D. SPATT
                                               United States District Judge