Case 1:07-cv-02413-ADS-AKT   Document 132   Filed 01/09/13   Page 1 of 12 PageID #: 1266

FILED
CLERK
1/9/2013 12:14 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
JUNIPER ENTERTAINMENT, INC. and
JUNIPER SERVICES, INC.,

                                    Plaintiffs,

      -vs.-

MICHAEL CALDERHEAD and JAMES
CALDERHEAD,
                              Defendants.

----------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
07-CV-2413 (ADS) (AKT)

**APPEARANCES:**

**Heller Horowitz & Feit, PC**
*Attorneys for the plaintiffs*
292 Madison Avenue, 20th Floor
New York, NY 10017
    By:   Richard Frank Horowitz, Esq.
           Allen Marc Eisenberg, Esq.
           Johnathan C. Lerner, Esq., Of Counsel

**NO APPEARANCE:**

Michael Calderhead
James Calderhead

**SPATT, District Judge**

      On March 31, 2012, this Court issued an Order in which it accepted in part and rejected in part a February 16, 2012 Report and Recommendation issued by United States Magistrate Judge A. Kathleen Tomlinson. In relevant part, because New York law requires a finding of actual or nominal damages before punitive damages may be awarded and because no compensatory damages were awarded to the Plaintiffs Juniper Entertainment Inc., and Juniper Services, Inc. ("the Plaintiffs"), the Court denied the Plaintiffs' request for punitive damages as against the Defendant Michael Calderhead, without prejudice and with leave to renew. The

Court directed the Plaintiffs to indicate whether they intended to pursue an award of nominal damages of Michael Calderhead's breach of his fiduciary duties and the legal basis supporting their application.

Presently before the Court is the Plaintiffs' renewal application. The Court notes that there has been no opposition to the Plaintiffs' renewal application. For the reasons set forth below, the Court grants the Plaintiffs' renewal application and awards the Plaintiffs $10 in nominal damages and $225,000 in punitive damages as against the Defendant Michael Calderhead.

## I. BACKGROUND

The facts and procedural history of this case have been exhaustively recounted in: (1) Judge Tomlinson's August 17, 2007 Report and Recommendation on the Plaintiffs' preliminary injunction motion ("Preliminary Injunction Report") (Dkt. No. 6); (2) this Court's September 19, 2007 Order, in which this Court adopted the Preliminary Injunction Report in its entirety (Dkt. No. 31); (3) Judge Tomlinson's February 16, 2012 Report and Recommendation on the Plaintiffs' motion for a default judgment ("the Report") (Dkt. No. 125); and (4) this Court's March 31, 2012 Order, adopting in part and rejecting in part the Report (Dkt. No. 128). Thus, the Court assumes the parties familiarity with the facts and procedural history of this case and will only briefly summarize the information pertinent to the instant motion.

### A.  Factual Background

The Defendant James Calderhead was employed by the Plaintiffs as an executive pursuant to an employment agreement executed in February 2005. During his employment, James Calderhead identified New Wave Communication Inc. ("New Wave"), as a potential acquisition target for the Plaintiffs. At that time, James Calderhead's brother, the Defendant

Michael Calderhead, owned a substantial interest in New Wave. In late 2005, the Plaintiffs purchased New Wave pursuant to a Stock Exchange Agreement (the "Agreement").

James Calderhead became the president of New Wave and Michael Calderhead was employed by the Plaintiffs as a New Wave executive. Michael Calderhead signed the Agreement. Pursuant to the Agreement's restrictive covenant, Michael Calderhead, as a seller of New Wave, agreed that during his employment he would not (1) induce employees to leave their employment; (2) induce customers to terminate their services with New Wave; (3) aid any competitor of the Plaintiffs; (4) hire any of the Plaintiffs' employees within one year of their employment with the Plaintiffs; and (5) induce any clients to transact business with competitors. On January 17, 2007, ten months after the close of the sale, Michael Calderhead informed the Plaintiffs that he intended to resign. However, he remained at New Wave until March 2007. On May 27, 2007, the Plaintiffs terminated James Calderhead's employment.

On June 15, 2007, the Plaintiffs filed the complaint in this action alleging that: (1) Michael Calderhead breached a stock exchange agreement; (2) James Calderhead breached an employment agreement; and (3) both the Defendants breached their fiduciary duties to the Plaintiffs. According to the Plaintiffs, in violation of their respective agreements, the Calderheads: (1) formed and operated a competitor company to New Wave called Communications Infrastructure, Inc. ("CII") while they were still employed by New Wave; (2) misappropriated confidential client information to lure clients away from New Wave; and (3) induced employees to leave New Wave and join CII.

The Plaintiffs immediately sought an order preliminarily enjoining the Calderheads from directly or indirectly competing with New Wave by soliciting its clients or inducing its employees to leave. On September 19, 2007, adopting Judge Tomlinson's Preliminary

3

Injunction Report in its entirety, the Court issued a preliminary injunction against Michael Calderhead only and enjoined him from: (1) disclosing any of the trade secrets or confidential information of the Plaintiffs or New Wave; and (2) soliciting, directly or indirectly any of the Plaintiffs' or New Wave's customers whose names and contact information appeared on one of the Plaintiffs' or New Wave's customer lists. No preliminary injunction was issued against James Calderhead.

**B.  The Defendants' Default**

At the commencement of this action, the Calderheads initially appeared pro se, but shortly thereafter they retained the law firm of Bracken, Margolin & Besunder, LLP.  On June 24, 2008, the Court granted the motion by Bracken, Margolin & Besunder, LLP to withdraw as counsel. Subsequently, the Calderheads again proceeded pro se until January 5, 2010, when they retained the services of Jonathan L. Stein, Esq., as counsel.  On July 29, 2010, the Court granted a motion by Mr. Stein to withdraw as counsel, and directed him to serve a notice by personal service on the Calderheads advising them that if they failed to either appear pro se or through counsel within thirty days of receiving said notice, the Court would entertain a motion to enter a default against them.

Mr. Stein served this notice on the Calderheads at their last known addresses on July 30, 2010.  On March 1, 2011, after no appearance was made, the Plaintiffs moved for a default judgment against the Calderheads pursuant to Federal Rule of Civil Procedure 55(b)(2). Subsequently, on April 11, 2011, the Court entered a default against the Calderheads and referred the matter to Judge Tomlinson for an inquest as to damages, including reasonable attorneys' fees and costs.

4

## C. The Report and Recommendation

During the inquest, which included a hearing and numerous submissions, the Plaintiffs sought the following categories of damages: (1) New Wave's lost profits for the years 2007 through 2010; (2) New Wave's net losses for the years 2007 through 2008 prior to its filing for bankruptcy; (3) damages associated with the destruction of the New Wave business; (4) attorneys' fees accrued in this action; and (5) punitive damages.

On February 16, 2012, Judge Tomlinson issued the Report, in which she recommended the following:

> Plaintiffs be awarded $225,000 in punitive damages as against Defendant Michael Calderhead. The Court respectfully recommends that no damages be awarded as against Defendant James Calderhead, nor for lost profits, net losses, destruction of business, or any attorney's fees for either Defendant. Plaintiffs are also entitled to post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

(Report at 35.) With respect to the award of punitive damages against Michael Calderhead, Judge Tomlinson stated "that punitive damages are warranted against Defendant Michael Calderhead in conjunction with his breaches of the fiduciary duty he owed New Wave as his employer[,]" because Michael Calderhead (1) "was competing with New Wave while employed there and improperly used New Wave's proprietary information"; and (2) "acted willfully and in disregard of the rights of [the Plaintiffs]." (Report at 31.)

Although the Court had already entered a default against him for his previous failure to appear in this action, the Defendant Michael Calderhead was nevertheless permitted to file objections to Judge Tomlinson's Report. As such, Michael Calderhead filed timely objections to

5

Judge Tomlinson's recommendation that the Plaintiffs be awarded punitive damages as against him.

**D.  The Court's March 31, 2012 Order and the Plaintiffs' Renewal Application**

On March 31, 2012, this Court issued an Order in which it accepted in part and rejected in part Judge Tomlinson's Report.  In this regard, the Court (1) denied the Plaintiffs' request for compensatory damages and attorneys' fees as against both the Calderheads; (2) denied the Plaintiffs' request for punitive damages as against James Calderhead with prejudice; and (3) denied the Plaintiffs' request for punitive damages as against Michael Calderhead, without prejudice and with leave to renew.  With respect to the Plaintiffs' request for punitive damages as against Michael Calderhead, although rejecting Michael Calderhead's objections to the Report, the Court held that "the absence of compensatory damages awarded to the Plaintiffs as against Michael Calderhead for his breach of fiduciary duties precludes the Court from awarding punitive damages against him under New York law." (March 31, 2012 Order at 11.)  However, the Court granted the Plaintiffs an opportunity to renew their application for punitive damages as against Michael Calderhead, directing the Plaintiff to indicate whether they intended to pursue an award of nominal damages for Michael Calderhead's breach of his fiduciary duties, and the legal basis supporting their application.

Thereafter, on May 14, 2012, the Plaintiffs filed the pending renewal application currently before this Court.  In their application, the Plaintiffs' set forth their intention to seek an award of nominal damages against Michael Calderhead.  According to the Plaintiffs, "nominal damages are appropriate in light of [Michael Calderhead's] unconditional breach of his fiduciary duties." (Renewal Application at 5.)  As such, the Plaintiffs "request that this Court adopt Magistrate Judge Tomlinson's Report and Recommendation insofar as it proposed an award of

6

punitive damages against [Michael Calderhead] in the amount of $225,000.00." (Renewal Application at 5.)

## II.  DISCUSSION

In the Report, Judge Tomlinson recommended awarding the Plaintiffs $225,000 in punitive damages as against Defendant Michael Calderhead based on his breach of his fiduciary duties.  However, as this Court explained in its March 31, 2012 Order,

> New York law requires a finding of actual or nominal damages before punitive damages may be awarded.  Action House, Inc. v. Koolik, 54 F.3d 1009 (2d Cir. 1995) ("The district court's instructions on punitive damages were not consistent with New York law, which requires a finding of actual damages before punitive damages may be awarded."); Reynolds v. Pegler, 223 F.2d 429, 434 (2d Cir. 1955) ("As the finding of compensatory damages was in the nominal sum of $1.00, defendants insist that under New York law there can be no award of punitive damages.  But we have already held otherwise."); see also Colavito v. New York Organ Donor Network, Inc., 438 F.3d 214, 221 (2d Cir. 2006) ("We think that the district court was likely correct that, under New York law, a plaintiff can ordinarily recover punitive damages for wanton and willful conduct even when there are only nominal compensatory damages."); Air China Ltd. v. Li, No. 07-CV-11128, 2010 WL 3260154, at *2 (S.D.N.Y. Aug. 5, 2010) ("The punitive damages award against Defendant Li based on fraud in the inducement must be reduced to zero because no compensatory damages for this cause of action were found.  Because any punitive damages award for fraudulent inducement would be in a proportion inconsistent with due process, a new trial on that punitive damages claim would be futile."); Car-Freshner Corp. v. Big Lots Stores, Inc., 314 F. Supp. 2d 145, 154 (N.D.N.Y. 2004) ("Punitive damages may be awarded on the basis of nominal damages, although it should be remembered that any award of punitive damages must not be grossly excessive." (citing Reinah Dev. Corp. v. Kaaterskill Hotel Corp., 59 N.Y.2d 482, 465 N.Y.S.2d 910, 452 N.E.2d 1238 (1983); White Eagle Market, Inc. v. Gonzalez, 36 A.D.2d 864, 321 N.Y.S.2d 1019 (2d Dep't 1971)).

(March 31, 2012 Order at 11-12.)  Thus, the Plaintiffs must first prove entitlement to nominal damages before this Court can award punitive damages.  See Action House, 54 F.3d at 1013

7

("Had nominal damages been awarded [with respect to breach of fiduciary duty and misappropriation claims], we believe that an award of punitive damages would have been consistent with New York law."); Bryce v. Wilde, 39 A.D.2d 291, 293, 333 N.Y.S.2d 614, 616 (3d Dep't 1972) ("Punitive damages [in a tortious interference with contract case] are not recoverable alone although they may be based upon an award of nominal compensatory damages and there must be actual malice shown on the part of a defendant."), aff'd, 31 N.Y.2d 882, 292 N.E.2d 320, 340 N.Y.S.2d 185 (1972).

For the reasons set forth below, the Court finds the Plaintiffs are entitled to nominal damages on their breach of fiduciary claim, and therefore an award of punitive damages against Michael Calderhead is also appropriate in this case.

**A.  As to the Nominal Damages**

The New York Court of Appeals has held that nominal damages "are allowed in tort only when need to protect an important technical right," such as in cases involving the need "to protect a landowner's right to be free of trespass . . . because a continuing trespass may ripen into a prescriptive right and deprive a property owner of title to his or her land." Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 95 (N.Y. 1993) (citation and internal quotation marks omitted). The Kronos Court went on to find that "[t]here is no similarly compelling reason for departing from the actual injury rule when the trespass alleged is not to real property but . . . an intangible property right arising under contract. In such cases, actual loss must be demonstrated." Id.

However, according to the Second Circuit, the Kronos Court's holding on nominal damages was limited "to cases concerning tortious interference with contract" **and** nominal damages appeared to be available in cases involving breach of fiduciary duty. Action House, 54 F.3d at 1014 n. 4.  Indeed, the Second Circuit noted:

8

> Because Kronos does not address the use of nominal damages to support an award of punitive damages, and because such a broad reading of the opinion would vitiate the holdings of many New York cases permitting the award of nominal damages in this context, see, e.g., Bryce, 39 A.D.2d 291, 333 N.Y.S.2d 614; Reinah Dev. Corp. v. Kaaterskill Hotel Corp., 59 N.Y.2d 482, 452 N.E.2d 1238, 465 N.Y.S.2d 910 (1983); 105 East Second Street Assocs. v. Bobrow, 175 A.D.2d 746, 573 N.Y.S.2d 503 (1st Dep't 1991); Weiss v. Miller, 166 A.D.2d 283, 564 N.Y.S.2d 110 (1st Dep't 1990), aff'd, 78 N.Y.2d 979, 580 N.E.2d 404, 574 N.Y.S.2d 932 (1991), we believe that the Court of Appeals intended its holding to apply only to cases concerning tortious interference with contract. Action House could thus have requested an award of nominal damages in this case [for the defendant's breach of fiduciary duty and misappropriation].

Id.

Importantly, in Weiss, which the Second Circuit cited in Action House, id., the New York Appellate Division, First Department, upheld an award of nominal damages against the defendant, a former dental associate, based, in part, upon his alleged breach of his fiduciary duty, "arising from appropriation of [the] plaintiff's master list of dental patients and subsequent solicitation and diversion of certain patients to the defendant's own competing dental practice," Weiss, 166 A.D.2d at 283-84. In this regard, the First Department held that "nominal damages will be awarded to a plaintiff where the law recognizes a technical invasion of his right or a breach of defendant's duty, but where the plaintiff has failed to prove actual damages or a substantial loss or injury to be compensated." Id. at 283.

Accordingly, the Court finds that an award of nominal damages against the Defendant Michael Calderhead is appropriate in this case. Although the Plaintiffs were unable to prove actual damages, the evidence indicates that during his employment at New Wave, Michael Calderhead was (1) competing with New Wave through his relationship with CII and (2) improperly retained proprietary information belonging to the Plaintiffs and misappropriated their

9

trade secrets. Through these actions, Michael Calderhead deprived the Plaintiffs of their right to keep their proprietary information confidential. Therefore, the Court recognizes the Plaintiffs' entitlement to nominal damages. See Weiss, 166 A.D.2d at 283-84. As such, the Court awards the Plaintiffs $10 in nominal damages as against the Defendant Michael Calderhead.

In this regard, the Court notes that it declines to adopt the holding in Penberg v. HealthBridge Mgmt., 823 F. Supp. 2d 166, 189-90 (E.D.N.Y. 2011). In that case, the court found that "the holding in [Weiss v.] Miller is contrary to the weight of New York authority" and, thus, "nominal damages would not normally be available" in cases involving a breach of fiduciary duty. Penberg, 823 F. Supp. 2d at 171. In reaching this decision, the Penberg Court also relied on the Second Circuit's decision in Action House. Id. at 190. However, in doing so, the Penberg Court cited to the opinion of the dissent. Id. at 190. Thus, this Court declines to follow the Penberg Court's holding and will award nominal damages.

**B. As to Punitive Damages**

"Under New York law, an employee has a common law duty of good faith and fair dealing to the employer not to exploit its confidential information for the benefit of himself and others." Paz Systems, Inc. v. Dakota Group Corp., 514 F. Supp. 2d 402, 410 (E.D.N.Y. 2007). New York courts have awarded punitive damages as against disloyal employees when the liability arises pursuant to a breach of fiduciary duty, as opposed to breach of contract. See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 526 (S.D.N.Y. 2011); Wrap-N-Pack, Inc. v. Kaye, 528 F. Supp. 2d 119, 126 (E.D.N.Y. 2007). "While New York law recognizes breach of fiduciary duty as an exception to the general rule that punitive damages are not recoverable for breach of contract claims, this is only true so long as the very high threshold of moral culpability is satisfied." First Nat. Bank of Arizona v. Nat'l

Lending Corp., 07-CV-2413 (ADS) (AKT), 2012 U.S. Dist. LEXIS 46410, at *15 (E.D.N.Y. Mar. 14, 2011) (internal quotation marks and citations omitted). "To sustain a claim for punitive damages in tort, one of the following must be shown: intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the rights of another." Don Buchwald & Assoc., Inc. v. Rich, 281 A.D.2d 329, 330, 723 N.Y.S.2d 8, 9 (1st Dep't 2001).

Rejecting all of Michael Calderhead's objections to the Report's recommendation concerning punitive damages, this Court found the following in its March 31, 2012 Order:

> Michael Calderhead's behavior was sufficiently egregious to warrant the imposition of punitive damages. In the Report, Judge Tomlinson based her recommendation for punitive damages against Michael Calderhead predominantly on factual findings made in the Preliminary Injunction Report, which this Court adopted in its entirety. Not only was Calderhead competing with New Wave while employed there and improperly using New Wave's propriety information, but he was actively recruiting New Wave employees to work for him at CII in contravention of the Agreement and using proprietary information to lure away New Wave customers.
> The intentional and calculating nature of his actions are further evinced by the following facts: (1) Michael Calderhead started at CII and resigned from New Wave within ten months of the sale of New Wave to Jupiter; (2) he erased information from his laptop that had an impact on New Wave's ability to follow up with customers; and (3) he used a proprietary New Wave customer contact list to compete with New Wave. The Court finds that this is the type of behavior that ought to be punished and deterred, which are the primary purposes of punitive damages. See Patterson v. Balsamico, 440 F.3d 104, 121 (2d Cir. 2006). Accordingly, the Court finds that Michael Calderhead's actions were sufficiently egregious to warrant the imposition of punitive damages.

(March 31, 2012 Order at 9-10.)

The Court further held in the March 31, 2012 Order that "the basis for Judge Tomlinson's proposed punitive damages award [in the amount of $225,000] [was] reasonable in light of

11

Michael Calderhead's cumulative conduct." (March 31, 2012 Order at 11.) Accordingly, the Court awards the Plaintiffs punitive damages in the amount of $225,000 as against the Defendant Michael Calderhead.

### III.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Plaintiffs' renewal application is granted.  The Court awards the Plaintiffs $10 in nominal damages and $225,000 in punitive damages as against the Defendant Michael Caldheread.

**ORDERED**, that the Clerk of the Court is directed to terminate the motion for reconsideration (Dkt. No. 131), to enter judgment as directed and to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
January 9, 2013

>	____/s/ Arthur D. Spatt____
>	ARTHUR D. SPATT
>	United States District Judge

12